## INDUCING EMPLOYEES TO BREACH CONTRACTS FOR PERFORMANCE OF SERVICE.

Common Pleas Court of Cuyahoga County.

BROST PATTERN WORKS COMPANY vs. FRANK B. REID ET AL. AND FOUR OTHER CASES.

Decided, 1922.

*Strikes—Workmen under Contract to Render Service for a Definite Period—May not be Persuaded to Break their Contracts and Quit—Injunction.*

Injunction lies against striking workmen, restraining them from persuading or attempting to persuade other employees to breach their contracts to render service for a definite period which has not yet expired; or from placing more than two pickets (in this case) in the vicinity of the employer's plant, or from following employees to or from their work, or from indulging in violence or intimidation.

*Stanley & Horwitz,* for plaintiff.

*Baker, Hostetler & Sidlo,* and *Carl Shuler,* for defendants.

The plaintiff operated a pattern manufactory in Cleveland, and the defendants were the officers and members of the Pattern Makers Union which called a strike against the plaintiff and other similar manufacturing companies in July 1920. Shortly after the strike began all of the manufacturers entered into written contracts with their non-union employees for service for definite periods of time. Picketing by the strikers, however, continued accompanied by some acts of violence and intimidation, but characterized chiefly by attempts at peaceful persuasion of the employees to breach their contracts and quit work. Five actions were brought by manufacturers, consolidated and tried for final order before Judge W. P. Stephenson of Adams county, then sitting in Cuyahoga county. The prayer of the petitions was for an injunction restraining defendants from attempting to induce breach of contracts of the employees by peaceful persuasion, as well as against violence and intimidation by excessive number of pickets.

The defendants admitted the existence of the contracts but claimed that their attempt to cause workmen to break them was without malice, and further, that the fact that the manufacturers had not placed their employees' under contract until after the strike was called indicated that the contracts were a mere device to obtain equitable relief—a situation which should preclude their right to standing in a court of equity.

The decree of the court enjoined the defendants from persuading, attempting to persuade or approaching for the purpose of persuasion, any employee while under contract to render service for a definite period of time to breach his contract; from stationing more than two pickets in the vicinity of the plaintiff's plant; from following the employees to or from their work; and from violence and intimidation.

STEPHENSON, J.

It is not necessary to go into a lengthy dissertation either as to the law governing these cases or as to the facts upon which the law shall operate in each particular case.

Suffice it to say that the evidence as to the employment of force, violence, threats, intimidation, persuasion, peaceful or otherwise, on the part of defendants, as a union and as individuals, toward the employees of the five concerns, was clear and convincing. The union, so far as the evidence discloses, did not actively engage in any of the acts of violence and intimidation as a union or local, and the dictates of ordinary intelligence can readily understand why this is so. The gentlemen who compose this organization are of far more than ordinary intelligence and are wise enough to guard against the existance of facts that would constitute their organization an unlawful conspiracy; but the union was passive with full knowledge of existent conditions and the court must conclude, passively assented to all that was done by its members.

The one thing that confuses this court is the fact that this body of men, practically all of them unhyphenated Americans, with a high degree of intelligence, at a time when the country was straining every nerve to get back from a war basis to a

commercial basis at the beginning of a period of deflation, could expect to gain anything by a "walk-out" and subsequent acts of violence and intimidation.

The civilian mind revolts at the sight of blood, and no organization, however meritorious its contention may be, can hope to attain its ends by the process of blood-letting in time of peace in a country where "each man is the peer of every other."

What the court has said along this line, is in the utmost good humor with the hope that these defendants, each and all of whom deported themselves as gentlemen during the progress of these cases, will think, each for himself, and determine each for himself whether or not force and intimidation are fallacies, fruitful of naught but trouble for the man or set of men who resort thereto.

The employees of these concerns at the time of these acts of violence and intimidation were under contract with their employers for a definite time. True, the terms of these contracts varied, but that fact is of no importance and can not effect the issues herein. It may be conceded that each and all these contracts were entered into since the declaration of strike and subsequent walk-out and were made and entered into for the purpose of these suits. They may be pure camouflage (a War term, it is to be hoped, is not out of place in this finding). But there's nothing to show that the contracts were not bona fide.

The right to contract is not a natural right, but it is the first relative right that man has when he becomes a social entity. His existence as a member of society depends on it, and our forbears attached so much sanctity to the right to contract that they forbade by constitutional provision that a law should be passed impairing the obligations of contracts.

At common law, he who maliciously interfered with a contract was liable in tort to the party injured. If his financial condition was such that nothing could be realized upon a judgment at law, or if the interference was continuing or the conditions were such that the damages could not be measured, the

Chancellor intervened with the equitable remedy of injunction. We have no statutes in derogation of the common law along this line, and equity is the same today as five hundred years ago, except for its increased and enlarged jurisdiction.

"Malicious interference" means but little in the law of contracts today. "Intent to injure" and "malicious interference" are synonamous and interchangeable terms, and simply mean that conditions of mind that accompanies the willful and conscious meddling of a person or persons with a contract in which he or they have no interest.

It would be presumptive in the court to cite authorities to sustain this proposition.

In dilating to some extent upon the contract law and the interposition of courts of equity, the court has not lost sight of the fact that organized labor has rights that all courts are bound to respect.

Labor has the right to organize. It has the right to a proper wage and proper hours and proper working conditions. It has the right to strike to advance its cause, it may *reasonably* picket the employers premises and may use *peaceful persuasion* with a view to inducing employees *not under contract for a definite term* to quit their employment; it may peaceably intercept prospective employees and make statement of its claim, argue its case and do all other things a citizen or class of citizens may lawfully do to win converts to its cause, but labor can go no further.

It is also contended that "no peril is imminent" in these cases. This is a question of fact that must be resolved in favor of plaintiff in each of these cases.

Defendants further contend that there is no evidence indicating that irreparable injury would result if an injunction were not granted.

"Irreparable injury" is a legal conclusion and amounts to nothing in the law of practice and procedure, unless and until an embyronic condition is shown, which if permitted to germinate will naturally and necessarily produce injury, the nature

of which in the particular case, being such that reparation can not be made therefor.

As a finality, it resolves itself into a question of fact, and the court must resolve this fact in favor of each of plaintiffs herein.

The court has endeavored to pass upon all the questions raised in these cases, and has given a general resume of the law applicable, as the court understands it, lack of time preventing a more exhaustive opinion.

The finding of the court must be in favor of plaintiff in each of these cases, and a perpetual and permanent injunction is allowed as prayed for in each case.

A decree may be drawn in each case in accordance with this finding.

If counsel can not agree as to what such decree should contain, each side may prepare and present separate decrees to the court for approval.

Defendant's exceptions will be noted in each case separately and severally.